CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

KELLY I. VOLKAR (CABN 301377)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
Kelly.volkar@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ZANE ISHMAEL COVINGTON,<br><br>Defendant. | Case No. 4:25-cr-00363-JST<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: September 25, 2026<br>Time: 1:30 p.m.<br>Judge: Hon. Jon S. Tigar |

## TABLE OF CONTENTS

INTRODUCTION ........................................ 1
BACKGROUND ........................................ 2
I. Offense Conduct ........................................ 2
A. Minor Victim 1 ........................................ 2
B. Minor Victim 2 ........................................ 3
C. Counts Three and Four re: Additional Minor Victims ........................................ 4
D. Covington's Prior Convictions ........................................ 4
II. Procedural History ........................................ 5
ARGUMENT ........................................ 6
I. Legal Standard ........................................ 6
II. Sentencing Guidelines Calculation ........................................ 6
III. The United States Recommends 25 Years of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors ........................................ 8
A. Nature and Circumstances of the Offense ........................................ 8
B. History and Characteristics of Covington ........................................ 10
C. Protection of the Public and Adequate Deterrence ........................................ 11
D. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense ........................................ 12
IV. The United States Seeks a Restitution Hearing Within 60 Days After Sentencing ........................................ 13
CONCLUSION ........................................ 14

# **Table of Authorities**

Page(s)

Cases

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) .......... 9
*New York v. Ferber*,
458 U.S. 747 (1982) .......... 9, 11
*Paroline v. United States*,
572 U.S. 434 (2014) .......... 9, 13
*United States v. Carty*,
520 F.3d 984 (9th Cir. 2008) .......... 6
*United States v. Kimbrough*,
522 U.S. 85 (2007) .......... 6
*United States v. Mendez*,
35 F.4th 1219 (9th Cir. 2022) .......... 9
*United States v. Mendonsa*,
No. 25-1517, 2026 WL 2728468 (9th Cir. Sept. 16, 2026) .......... 7
*United States v. Waknine*,
543 F.3d 546 (9th Cir. 2008) .......... 13
*United States v McCalla*,
545 F.3d 750 (9th Cir. 2008) .......... 9

Statutes

18 U.S.C. § 2251(a) .......... 5
18 U.S.C. § 2252 .......... 13
18 U.S.C. § 2252(a)(2) .......... 5
18 U.S.C. § 2252(a)(4)(B) .......... 5
18 U.S.C. § 2259 .......... 13
18 U.S.C. § 2259(b)(2) .......... 13
18 U.S.C. § 3553(a) .......... 6, 8
18 U.S.C. § 3553(a)(1) .......... 9
18 U.S.C. § 3553(a)(2)(A) .......... 12
18 U.S.C. § 3553(a)(2)(B) .......... 11
18 U.S.C. § 3664(d)(5) .......... 14
18 U.S.C. § 3771(a)(7) .......... 13
California Penal Code § 288(c)(1) .......... 2, 5
California Penal Code § 311.11(a) .......... 2, 5

## INTRODUCTION

Zane Ishmael Covington committed heinous and unfathomable acts. Every member of society—and, in particular, every person who has ever been entrusted to watch children—should be appalled. Covington sexually abused two minor girls, both of whom were under five years old at the time, who had been entrusted to his care—and he filmed it. And he did so while on probation for his last conviction, which stemmed from him living with and routinely having sexual intercourse with a then-15-year-old girl when he was in his late 30s. Undeterred by a 12-year prison sentence, Covington abused the two minor victims in 2021 and 2022, filmed it, and then went further by creating new videos splicing together images and videos of his own abuse with child sexual abuse material of other minors produced by other individuals. In 2025, Covington was still downloading and viewing child sexual abuse material, even capturing the sickening material on his cell phone while it played on a laptop computer. This is one of the most egregious sets of facts imaginable.

Likely understanding the irreparable damage he has caused once facing federal charges for his conduct, Covington, for his part, has shown remorse and expressed near-immediate willingness to accept responsibility and plead guilty, as he has now done. In this case, 18 U.S.C. § 3553(a) requires the United States to balance the serious harm done to Minor Victim 1 and Minor Victim 2, who suffered revolting and untold exploitation while in Covington's custody and care, while also acknowledging the early and quick resolution—within a year of initial charges—that will permit the victims to move forward and begin the healing process.

The government acknowledges that the U.S. Probation Office recommends 30 years' imprisonment, and understands and agrees that the conduct alone warrants a significant sentence. However, on balance, for the reasons set forth below, the government respectfully requests that the Court accept the parties' agreed-upon proposal, sentence Covington to **25 years (300 months) of imprisonment**, followed by a 10-year term of supervised release (with the conditions recommended by Probation and set forth in the plea agreement), a $400 special assessment, restitution in an amount of at least $400,000, and an order of forfeiture of Covington's electronic devices.

As of this filing, both Minor Victim 1's mother and father, as well as the mother of Minor Victim 2, intend to attend the sentencing hearing, and each of them would like the opportunity to speak

at the hearing. The government respectfully requests that the Court order the victims' names to be sealed and any inadvertent reference to a victim's name replaced in the transcript with either the respective anonymized pseudonym or the individual's initials.

## BACKGROUND

### I. Offense Conduct

Covington is a 54-year-old registered sex offender who produced child sexual abuse material involving two minor girls entrusted to his care, both of whom were under 5 years old at the time of his abuse. Covington then used software to splice together the videos and images he personally produced with child pornography downloaded from the internet. Covington's abuse went undetected for years until Google discovered that Covington stored child sexual abuse material in his Google Drive and Google Photos, which were synced with a cloud storage no longer locally maintained, and Google alerted the relevant authorities.

Covington committed the instant offense after a prior sex offense, which enhances the mandatory minimum he faces. Specifically, Covington was previously convicted in 2014 and sentenced to 12 years in state prison for fourteen counts of violations of California Penal Code § 288(c)(1), lewd acts with a child 14–15 years old, and one count of a violation of California Penal Code § 311.11(a), possession of child pornography.

#### A. Minor Victim 1

In September 2025, Google sent a CyberTip to the National Center for Missing and Exploited Children (NCMEC) relating to Covington's Google account and reporting that it appeared some of the files might be "NEWLY PRODUCED and/or HOMEMADE CONTENT." Presentence Investigation Report ("PSR") 8. Google employees identified two possible minor victims, and used Facebook to identify Covington and alert that Covington appeared to be related to one of the pre-pubescent minor victims in the photos and videos. *Id.* For example, on or about September 15, 2025, 48 images and videos that appeared to be newly created child sexual abuse material were uploaded to Covington's Google Photos account, as well as other indicia identifying Covington, such as a picture of his driver's license. PSR 10. Also on Facebook, there were more recent photographs indicating that Covington continued to have access to these minor victims. *See id.*

Law enforcement acted on Google's alert within two weeks. *See* Dkt. 1. Law enforcement executed a residential search warrant on or about October 1, 2025, and learned that the minor victims did not live with Covington, though he did have somewhat regular, trusted access. *See* PSR 11. The parents were interviewed by law enforcement, who positively identified their daughters depicted in the material described below. PSR 11–16.

On or about November 28, 2021, Covington knowingly set up a camera and filmed himself undressing Minor Victim 1 from a one-piece swimsuit in a bathroom, during which time he ran his hand over her undeveloped breast and attempted to penetrate her anus or vagina. PSR 15; Dkt. 38 2. Minor Victim 1 was three or four years old at the time. PSR 16. In July and August 2022, Covington also possessed images of Minor Victim 1 in the same swimsuit in some instances nude, and with Covington penetrating or attempting to digitally penetrate her anus. PSR 15.

**B. Minor Victim 2**

In addition, on or about May 16, 2021, Covington knowingly filmed himself digitally penetrating Minor Victim 2 while she was asleep. PSR 11; Dkt. 38 2. Minor Victim 2 was four or five years old at the time. PSR 12. Law enforcement seized a cell phone from Covington's bedroom that matched the cell phone used to take the video, and parents of Minor Victim 2 positively identified the surroundings of where the abuse occurred. *See* PSR 13. It was also reported that Covington had previously taken a shower with Minor Victim 2, and images and videos of Minor Victim 2 naked in a bathtub were also present on Covington's devices. *See* PSR 17, 19.

Law enforcement identified nearly 300 images and videos that Covington created, which includes screenshots and duplicates of those described above. Law enforcement also identified child sexual abuse material in Covington's possession and on his electronic devices that involved known child pornography series, as described in the next section.

Covington used computer software to purposefully splice together portions of the videos and images of Minor Victim 1 and Minor Victim 2 described above along with child sexual abuse material created by individuals other than Covington. *See* PSR 18–20; Dkt. 38 2. Specifically, one thumbdrive in Covington's possession contained a dozen videos that ranged from a few seconds to over 16 minutes long that depicted mixtures of child erotica, child pornography, images of Minor Victim 1

and Minor Victim 2, and zooming in / enlarging of Minor Victim 2's vagina. *See id.* Covington also added personal details, such as renaming the files and adding a "splash screen" with variations of Minor Victim 2's name combined with "love" or "lickalot". *See* PSR 20. Metadata associated with these videos demonstrates that, while many were created in 2022, including one created on February 17, 2022, Covington last accessed several of these files on September 27, 2025—mere days before he was arrested on October 1. PSR 19–20; *see also* US-003501 to US-003514.

**C. Counts Three and Four re: Additional Minor Victims**

In addition to the nearly 300 images and videos that Covington produced relating to Minor Victim 1 and Minor Victim 2, law enforcement also identified more than 1,300 video and image files that NCMEC matched to 47 known series of child sexual abuse material ("CSAM"), or child pornography. PSR 25. Covington uploaded CSAM to his Google Drive and Google Photos, took pictures using his cell phone while CSAM videos were playing on his laptop, and possessed multiple thumbdrives each containing dozens of videos of CSAM. PSR 21. Law enforcement specifically seized from Covington's bedroom 10 different smartphones, 9 thumbdrives, a laptop, a tablet, and a box labeled "microcamera" along with a hidden camera, described further in Paragraph 12 of the plea agreement. *Id.*; Dkt. 38 12. Covington had conducted Google searches with known child pornography terms, such as "PTHC" (pre-teen hardcore). PSR 21.

As described in the plea agreement and the PSR, Covington knowingly received a video from a CSAM series known to law enforcement where an adult male forcibly raped a then-9-year-old girl. PSR 22; Dkt. 38 2. The victim of this known series is seeking restitution in this case, as described in the PSR 26(c).

**D. Covington's Prior Convictions**

This is not Covington's first brush with law enforcement. The PSR indicates that Covington has 17 other adult convictions, 11 other arrests, and is independently a Criminal History Category V. PSR 67–89. While most are substance use and theft-related, Covington also has a qualifying prior sex offense. *Id.*

In 2011, Covington was arrested in connection with an unrelated investigation and law enforcement determined that he had CSAM on his cell phone. That same year, in April 2011, Covington

was living with a 15-year-old runaway girl when he was 38 years old. PSR 79. According to the victim, she met Covington via MySpace in January 2011 and they had been sexually active multiple times per week ever since. *Id.* Covington pressured the girl to get "married" and, despite multiple attempts to separate them, Covington continued his sexual relationship with the 15-year-old for over a year. *See id.* While the case was pending, HSI initiated a separate investigation into Covington in mid-2013 because Covington was downloading CSAM on BitTorrent, including files that had titles like "PTHC" and "Toddlers, babies, little girls pthc pics". *Id.*

It appears that all of the above conduct was addressed by Covington's conviction in September 2014, at which point he was sentenced to 12 years in state prison for fourteen counts of violations of California Penal Code § 288(c)(1), lewd acts with a child 14–15 years old, and one count of a violation of California Penal Code § 311.11(a), possession of child pornography. PSR 79. Covington was released on February 24, 2019, and remained on "post-release community supervision" until February 2025. *See id.* Thus, Covington was on probation when he filmed the videos of Minor Victims 1 and 2 described above. *See* PSR 85.

## II. Procedural History

On September 29, 2025, a one-count federal criminal complaint charged Covington with Production of Child Pornography, specifically relating to Minor Victim 2. *See* Dkt. 1.

On October 30, 2025, a federal grand jury returned a four-count indictment, charging Covington with two counts of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Counts One and Two), one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b) (Count Three), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count Four). Dkt. 10. Covington waived contesting detention and has been detained since his arraignment on the complaint on October 2, 2025.

On June 5, 2026, Covington pleaded guilty to all four counts in the Indictment via a written plea agreement. Dkt. 38. In the plea agreement, the parties agreed that a reasonable resolution of the matter is 300 months (25 years) of imprisonment to be followed by 10 years of supervised release, to run concurrently for Counts One, Two, and Three, and concurrent with the maximum available imprisonment term for Count Four (20 years), with special conditions listed further listed in the

agreement. *Id.* 8–9.

Covington will appear before the Court for sentencing on September 25, 2026, at 1:30 p.m.

## ARGUMENT

### I. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include (among other factors):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### II. Sentencing Guidelines Calculation

As set forth in the plea agreement, the Sentencing Guidelines calculations for Defendant's offense level is as follows:

| | **U.S.S.G. Section** | **Level/Points** |
|---|---|---|
| **Base offense level** | § 2G2.1(a) | 32 |
| **Specific offense characteristics** | | |
| Victim Under 12 Years Old | § 2G2.1(b)(1) | +4 |
| Offense Involved Commission of Sexual Contact or Act | § 2G2.1(b)(2)(A) | +2 |
| Defendant was a Relative | § 2G2.1(b)(5) | +2 |

| | | |
|---|---|---|
| **Multiple Victim Adjustment** | § 2G2.1(d)(1); § 3D1.4 | +2[1] |
| **Acceptance of responsibility** | § 3E1.1 | -3 |
| **Total offense level** | | 39 |

Dkt. 38 7.

The government largely agrees with the Guidelines calculation provided by the Probation Office —with one notable exception discussed below. *See* PSR 29–64. The government did not include the +5 enhancement under U.S.S.G. § 2G2.2(b)(5) for the grouping covering Counts Three and Four relating to Receipt and Possession of Child Pornography. *Cf.* PSR 35. Because these counts relate to material other than the videos and images involving Minor Victims 1 and 2, and because the government was not certain if the pattern of activity could extend to evidence gathered in connection with Covington's prior sex offense conviction, it did not seek to apply this enhancement. Notably, the Ninth Circuit recently definitively answered the latter consideration in favor of the Probation Office's recommendation. *See United States v. Mendonsa*, No. 25-1517, 2026 WL 2728468, at *1–2 (9th Cir. Sept. 16, 2026) (holding U.S.S.G. § 2G2.2(b)(5) enhancement did not relate solely to offense of conviction and could include defendant's conduct even if not the basis of a prior conviction).

With the +5 enhancement, the group for Counts Three and Four would be 34, as the Probation Office calculated (PSR 32–41), which in turn is 5–8 levels less serious than the group associated with Count One, adding a half-level and therefore another offense level under U.S.S.G. § 3D1.4. Without the +5, Counts Three and Four are more than 9 levels below and would not add to the Guidelines calculation, which is why the plea agreement lands at Total Offense Level of 39 versus the PSR's calculated Total Offense Level of 40. *Compare* Dkt. 38 7, *with* PSR 29–64.

The government did not have the benefit of the *Mendonsa* decision prior to agreeing to the plea agreement, and the government remains bound by the plea agreement. Thus, the government does not include that extra point above and objects to PSR 35 to honor the parties' plea agreement; however, either Total Offense Level 39 (as determined in the plea agreement) or 40 (as calculated by Probation) coupled with Criminal History Category V results in a Guidelines range of 360 months to life

[1] Probation calculates this as +3. *See* PSR 29–64. The government disagrees for reasons stated.

imprisonment.

Covington is Criminal History Category V under U.S.S.G. § 4B1.5. The Probation Officer also concluded that Covington's criminal history score is 11, and he therefore independently falls into Criminal History Category V. PSR 86–87. The Guidelines range for either Total Offense Level 39 or 40 with a Criminal History Category V is 360 months (30 years) to life imprisonment. PSR 131. The Probation Office recommends a low-end Guidelines sentence of 360 months (30 years) of imprisonment. The parties have jointly agreed in the plea agreement to recommend a sentence of 300 months (25 years) of imprisonment, to be followed by 10 years of supervised release, and other conditions described further in the plea agreement. Dkt. 38 8.

## III. The United States Recommends 25 Years of Imprisonment Based on the 18 U.S.C. § 3553(a) Factors

The depraved and unfathomable nature of the underlying offense cannot be overstated—and is aptly represented by the applicable range at the top of the Guidelines chart. Covington's conduct warrants the sentence recommended by the Guidelines—and Probation Office—at least 30 years. Other § 3553(a) factors, however, weigh in favor of a lesser sentence. First, in the course of discussing resolution of this case, the government received mitigating evidence from defense counsel indicating that Covington suffered his own traumatic childhood, as well. Second, the government places great weight on the speed with which Covington has accepted responsibility, conserving government resources in not having to litigate pretrial motions or otherwise prepare for trial, but also, most importantly, helping to bring the victims some semblance of closure on such a short timeframe from discovery of the abuse, and without subjecting them to the re-traumatization inherent in prolonged litigation or testifying at a trial.

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 25 years' imprisonment for the following reasons:

### A. Nature and Circumstances of the Offense

The nature and circumstances of the offense are of the most serious and egregious that appear in our criminal justice system. This is reflected in the Guidelines range of 30 years to life in prison. *See*

18 U.S.C. § 3553(a)(1). Covington abused the trust placed in him to watch over and care for these young girls by molesting them—and filming it. Minor Victim 2 was asleep. And younger than five years old. Minor Victim 1 was only three or four years old. There is no more defenseless of a victim in our society than children, particularly as young as they were.

These victims were young children. They were unprepared and unequipped to cope with sexual trauma inflicted upon them at such a young age. The Supreme Court has long recognized that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982). This is in part because "[a] democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens." *Id.* (quotation omitted). The Supreme Court has also acknowledged that child pornography "produces concrete and devastating harms for real, identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457–58 (2014); *see also United States v McCalla*, 545 F.3d 750, 755–56 (9th Cir. 2008) ("Congress specifically expressed the idea . . . that child pornography . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result[.]"). Surreptitiously imaging and photographing minors falls within this category. *See United States v. Mendez*, 35 F.4th 1219, 1221–23 (9th Cir. 2022) (surreptitious filming of minor in her bedroom without her knowledge or permission constituted a violation of 18 U.S.C. § 2251(a)). Indeed, the Supreme Court has repeatedly recognized that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber*, 458 U.S. at 758; *see also id.* at 758 n.9 (describing long-lasting effects of child sexual abuse into adulthood and supporting studies). "[A]s a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002).

Covington chose to capture his abuse of Minor Victim 1 and Minor Victim 2 on video. He didn't stop there. He used software to create lengthy productions splicing together his abuse of minors he had access to with abuse of other minors that he likely downloaded on the internet.

These victims are loved. Their parents are devastated and enraged by the abuse of their daughters and the suffering they were helpless to prevent. When the trust of a child that an adult caring for her will act in her best interest is violated, it changes the child's fundamental understanding of whether adults around her can be trusted to keep her safe. The parents of Minor Victim 1 and Minor Victim 2 will inevitably remain suspicious of who they can trust in the future and will wonder whether someone they should be able to trust will instead exploit their daughter. No sentence can restore the innocence and sense of security that these minor victims have lost. No period of incarceration can erase the fear, confusion, or loss of trust these children will maintain for a long time to come. And no legal proceeding can completely repair the disruption that has been imposed on the families of those abused.

Covington's deliberate actions in sexually molesting the children under his care for his sexual gratification, his prior sexual abuse of minors, and his predatory behavior, are what truly warrant a severe sanction in this case. The nature and circumstances of the instant offense warrant a lengthy sentence.

**B. History and Characteristics of Covington**

Covington has a lengthy criminal history that independently warrants a significant sentence. He is a Criminal History Category V. *See* PSR 86–87. As described above and in the PSR, Covington has previously been convicted of a sex offense and was a registered sex offender at the time of the present offense. PSR 79. Covington, when 38 years old, had regular sexual intercourse with a 15-year-old for over a year, despite multiple attempts by her mother and law enforcement to convince her to leave him, and despite indications that he may have occasionally physically abused her. *Id.* In the three years before he was convicted of that offense, Covington was also found with child pornography on his cell phone in 2011, and then was downloading child pornography on BitTorrent in 2013, including files that referred to toddlers, babies, and little girls. *See id.*

Weighing against these facts, the United States also considers the trauma that Covington experienced in his childhood. As outlined in the PSR, Covington grew up in a volatile household with an alcoholic parent, wherein he suffered physical and emotional abuse, as well as discrimination throughout his life. PSR 103–123. He has also detailed his own history of trauma. *Id.* Not surprisingly, Covington developed addiction issues as young as 12 years old, and was using

methamphetamine daily up until his arrest. PSR 122.

The government believes Covington's prior trauma supports a downward variance and the parties' recommended sentence accounts for these factors. Thus, the government believes that a 300-month sentence, which is below the Guidelines level and the statutory maximum for Counts One and Two, in this case is appropriate.

**C. Protection of the Public and Adequate Deterrence**

Perhaps the most important factor influencing the government's recommended sentence is its obligation to protect children from abuse and deter future pedophiles. *See* 18 U.S.C. § 3553(a)(2)(B) and (C). Covington received, produced, and possessed images and videos of the minor victims being sexually molested. He actively participated in the production of these images and videos, and he did so for his sexual gratification. He took the videos of his abuse and used computer software to make longer videos spliced together with abuse of other children.

Children should never have to wonder whether an adult who is supposed to help and protect them may instead use that entrusted position for harmful purposes. The children and families impacted by Covington's actions will continue living with the consequences long after this court proceeding concludes. The Supreme Court has recognized that "the use of children as subjects of pornography materials is harmful to the physiological, emotional, and mental health of the child." *New York v. Ferber*, 458 U.S. 747, 758 (1982). Here, Covington's sexual abuse of the minors caused great physiological, emotional, and mental harm to the minor victims involved.

300 months of imprisonment would also serve the general and specific deterrence goals of § 3553(a). General deterrence would be served because a lengthy prison term would illustrate that the criminal justice system will impose severe punishment on any like-minded individuals who seek to sexually exploit minor children with hands-on offenses. General deterrence is especially important in this case because it will signal to victims that the criminal justice system will impose such a heavy penalty on such offenders—encouraging anyone subject to such behavior in the future to come forward. Specific deterrence against Covington could not be more warranted given his criminal history—Covington has already shown that he is a recidivist offender, as his prior state court conviction did nothing to stop him with respect to these two victims.

It is important that the Court considers the need to protect the public from sexual predators like Covington. Covington is a clear danger to the community. Covington has a history and pattern of preying upon vulnerable children. He used the minor victims in this case for his own sexual gratification. He sexually molested the victims in this case on multiple occasions. A sentence short of the mandatory minimum in this case will not protect the public, and minors, from Covington's predatory behavior. Accordingly, a lengthy sentence—such as 25 years—will be a just resolution that will protect the public and afford adequate deterrence.

**D. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense**

On balance against the seriousness of the offense, is Covington's mitigating background and his willingness to accept responsibility early and often throughout the less-than-one-year that charges against him have been pending. Covington's initial defense counsel began plea negotiations almost immediately, and the parties had been poised to set a change of plea within a matter of months before Covington changed his counsel. Covington's current counsel engaged an expert and put together an extensive mitigation package, all within a short period of time for these types of cases. Despite facing a 25-year mandatory minimum sentence, Covington agreed to change his plea within nine months of being charged, and will be sentenced almost exactly one year after his initial arrest. By contrast, his prior state offense took over three years to resolve. *Cf.* PSR 79.

The speed with which Covington was ready and willing to accept full responsibility for his actions has a number of accompanying benefits, all of which promote respect for the law and the criminal justice system as a whole. *See* 18 U.S.C. § 3553(a)(2)(A). First, it demonstrates true contrition and remorse. Second, it conserves resources of the judiciary, the government, and defense counsel to avoid pretrial litigation or needlessly preparing for trial when a defendant knows he wants to resolve via plea agreement. Third, it helps the victims avoid the re-traumatization inherent in testifying at trial, which the parents of Minor Victim 1 and Minor Victim 2 would have likely needed to do here if this case had proceeded to trial. Finally, and most importantly, it helps to bring closure that much sooner for the victims, who have had their lives upended, as demonstrated by their victim impact statements. While the identified victims will suffer lifelong trauma that will not end with this case, it is also a fact

that the longer the court proceedings linger, the prolonged nature causes its own suffering and need to relive the traumatic events. This is one of the reasons why crime victims have the "right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7).

In short, a custodial sentence of 300 months (25 years) of imprisonment to be followed by a 10-year term of supervised release—which will leave Covington under federal supervision until he is nearly 90 years old—balances the competing § 3553(a) factors and is a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense and to provide deterrence, but also to account for relevant mitigating factors.

**IV. The United States Seeks a Restitution Hearing Within 60 Days After Sentencing**

Restitution for victims of child pornography offenses is mandatory under 18 U.S.C. § 2259. Victims are statutorily entitled to restitution under the provisions of the Mandatory Victim Restitution Act of 1996, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (the AVAA), and the Mandatory Restitution for Sexual Exploitation of Children Act of 1994. Specifically, in child pornography trafficking cases—which is defined to include offenses under 18 U.S.C. § 2252, as Covington has pleaded to here—the Court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the defendant's crime, and then "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2); *see also Paroline*, 572 U.S. at 457–62. Restitution in child pornography cases serves "twin goals of helping the victim achieve eventual restitution for all her child-pornography losses and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Paroline*, 572 U.S. at 457. To the extent there is a dispute about the correct amount of restitution, it is the government's burden to demonstrate the amount of the loss to the victim by a preponderance of the evidence. *See United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e)).

The government respectfully requests that the Court set a date for a hearing on restitution approximately 60 days after the current sentencing hearing. The government is in the process of obtaining the relevant information to meet its burden in seeking restitution on behalf of Minor Victim 1 and Minor Victim 2. Pursuant to 18 U.S.C. § 3664(d)(5), undersigned counsel informs the Court that

the victim's losses are not ascertainable 10 days prior to sentencing, and requests that the Court set a date for the final determination of the claims within 90 days of the sentencing hearing if the parties are unable to reach a stipulated resolution.

**CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Covington to 25 years (300 months) of imprisonment, followed by a 10-year term of supervised release (with the conditions recommended by Probation and set forth in the plea agreement), a $400 special assessment, restitution in an amount of at least $400,000 (but a specific amount to be determined at a later date), and an order of forfeiture of Covington's electronic devices. This sentence is reasonable and sufficient, but not greater than necessary, to achieve the goals of sentencing.

DATED: September 18, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Kelly I. Volkar*________
KELLY I. VOLKAR
Assistant United States Attorney